The opinion of the court was delivered by
Breaux, J.
The plaintiff and the defendant bought land in Alabama from the Elyton Land Company, a corporation incorporated under the laws of the State of Alabama. The purchase price was ten thousand dollars; each paid one thousand dollars cash and gave notes for the credit portion. Two years and two months after this sale had been made, the capital and interest on the credit portion of the purchase price amounted to nine thousand three hundred dollars. The old notes were canceled and a deed was made to Porr teous and Roehl by the company. The latter executed their notes for the amount due by them, payable in eight annual instalments, with semi-annual inierest coupons. This amount Roehl. the plaintiff, *1584 claims to have paid, and this suit is brought by him against the defendant to recover from him the sum of three thousand one hundred and fifty-six dollars and twenty-two cents, with interest, being, he alleges, the defendant’s share or a portion of a loss made by them “ in a joint real estate speculation.”
The plaintiff and defendant defaulted on some of these notes.
The deed in question signed by Porteous and Roehl was in the common law form, obligating themselves to pay the balance of the purchase price. The deed recites that in case of default as to any part of the price, the mortgagee would have the right to sue for the entire purchase price; after giving notice for thirty days by advertisement, of the time, place and terms of the sale, to sell the property at puhlic outcry; execute title and apply the proceeds of the sale to the payment of the indebtedness and costs. The deed also recites:
“Such foreclosure, sale and conveyance may be made by the president or vice president of the Elyton Land Company or any person authorized by writing.”
A bond executed by this company bears the date of this act of mortgage.
The recitals of the bond identify the mortgage and the notes as part of the sale and show that a sale was made of the property to the plaintiff and the defendant, “to have and to hold to the said T. C. Porteous and Herman Roehl.”
The following is another of the declarations of the bond (the makers of the notes, plaintiff and defendant, were, under the laws of Alabama, jointly and severally bound) :
“And the Elyton Land Company, for the consideration aforesaid, hereby covenants and agrees that it is seized of an indefeasible estate in fee simple in and to the premises aforesaid; that it has a good right to sell and convey the same; that the same are free from encumbrances, and that it will warrant the title.”
The plaintiff, concerned about this indebtedness to the land company, called upon the defendant on the subject. The latter’s advice was to let the property be sold, as under the laws of Alabama they would have two years after the sale within which to redeem.
An advice, it seems, that the plaintiff was not willing to follow.
The property was, plaintiff says, offered for sale. On the day of sale he was in Birmingham, Ala., and bid upon the property. It was *1585 on his bid, he alleges, adjudicated to him for six thousand dollars, and that he paid that amount and the remainder due by them on their notes. That the property was cried out and adjudicated to him by the vice president of the company, by whom alone the deed executed is signed.
This deed was admitted in evidence over the objections of the defendants.
During the trial several bills of exceptions were reserved.
The first bill shows that the counsel for defendant objected to the deed of mortgage of 17th day of January, 1889, upon the ground that “it purported to be a deed of sale of real estate ” to the defendant, by whom it was not signed, and in consequence inadmissible. The second bill of exception was reserved to the court’s action in admitting the deed of sale signed by the vice president of the land company, vendor, to the plaintiff, vendee.
The grounds are that it is not supported by the required formalities. Copies of the Alabama statutes, relating to contracts in writing assignable by endorsement, were admitted in evidence. They are evidence of the “ effect of transfer on note given for the purchase money of lands and joint promises in writing, how construed.” They relate exclusively to bills and notes.
Judgment was pronounced for the defendant, rejecting plaintiff’s demand.
The plaintiff appeals.
Although the defendant mortgagor did not sign the deed of mortgage, having signed the notes secured by the mortgage, and obligated himself as one of the makers of the notes, with special reference to the mortgage by which they are secured as to their payment, he was without ground to urge that he was not a party to the mortgage.
In support of the second bill the defendant by counsel urges that in order to give effect to the last deed (the deed of sale to the plaintiff) , it was necessary to prove that the alleged vice president of the company had authority to sign the deed and that it was necessary to show that a notice of demand and notice of seizure and sale were duly served upon the mortgagors, and that the sale was advertised as required.
The plain facts are that it is not shown that the property was advertised for sale and that any of the required notices were given; *1586 there is not of record any authentic evidence of the proceedings of foreclosure. It may be that some of the formalities of foreclosure-are legal under the laws of Alabama, such as the offering of the-property for sale by public auction by the vice president of the land company, the dispensing of all notices save the advertisement.
They are indispensable to a foreclosure of mortgage under the laws of this State. In the absence of all proof regarding the foreclosure of mortgages, it must be presumed that the laws of Alabama are similar in pari material to the laws of this State.
“ The statutes of sister States are to be proved as facts, and no-judicial notice can be taken of them, whether they be public or private.” Sedgwick ou the Interpretation of Laws, 2d Ed., p. 299.
Without legal proof of the laws in point of a common law State, it would be extremely difficult to hold under Louisiana laws that a common law mortgage has been duly foreclosed, in compliance with her laws.
The forms and conditions of the act are entirely different, and the steps to be followed in the foreclosure.
None the less, we must take notice of the fact under the evidence that plaintiff is the holder of the notes signed by him and the defendant as makers, and that the former is subrogated to the rights of the land company. At this point of the case there is very little difference, if any, between the plaintiff and the defendant, in so far as relates to the transfer of the land company’s right. But the plaintiff urges that he acquired them for six thousand dollars, value of the property they bought in joint speculation, that he paid the remainder of their indebtedness in order to obtain his discharge and to hold the defendant for the amount of his indebtedness. The defendant, on the contrary, argues that the amount paid for the land in question was nine thousand three hundred dollars, and that he in consequence does not owe any difference, as there is none between the purchase price of the land and the amount of the indebtedness.
The facts as we interpret them do not sustain the defendant upon this point. The plaintiff is the only witness. His utterances as a witness, it may be, were not always clear. There was no attempt at evasion, and, taken asa whole, it is manifest that he did not buy the property in question for the balance due on the purchase price. He emphatically denied having made any such purchase. We do not discover that in his transaction with the Land Company he has con- *1587 eluded himself from claiming the difference between the purchase price and the total indebtedness, after a sale will have been shown, as alleged.
Although the fact is not shown with legal certainty, we are led to infer that the price was six thousand dollars, and not nine thousand three hundred dollars as it is urged by the defendant.
In the present condition of the case we do not think he can be charged with either amount. The venture was joint. They were to look to the proceeds of the sale. If the plaintiff has bought the property, it is subordinate to the original agreement that the venture should be joint. The obligation depends upon a future event, the sale of the land.
“ It is not shown that any of the lands acquired by the parties under their agreement were ever sold.” Breaux vs. Lauve, 24 An. 179, 181.
We the, more readily adopt this view for the reason that it seems the property has been sold, and now it is only a question of settlement and payment of the difference between the price of the sale and the indebtedness (if a legal sale has been made).
It is therefore ordered, adjudged and decreed that the judgment appealed from be annulled, avoided and reversed.
It is further ordered, adjudged and decreed that the case be remanded to the District Court, to be tried in accordance with the views herein expressed.
That the costs be paid by the one finally cast in the suit.